UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


John T. Collins, IV

　　　　v.                          Civil No. 13-cv-470-LM
                                   Opinion No. 2014 DNH 146
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


O R D E R


Pursuant to 42 U.S.C. § 405(g), John T. Collins, IV, moves to reverse and remand the decision of the Acting Commissioner of the Social Security Administration, denying his application for disability insurance benefits under Title II.  Collins contends that the Administrative Law Judge ("ALJ") erred at Steps Two and Three of the sequential analysis.  The Acting Commissioner moves to affirm the decision.


**Standard of Review**

Disability, for purposes of social security benefits, is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled.  § 404.1520.  The claimant bears the burden, through the first four steps, of proving that his impairments preclude

him from working.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Commissioner determines whether other work that the claimant can do, despite his impairments, exists in significant numbers in the national economy and the Commissioner must produce substantial evidence to support that finding.  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

In reviewing the decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey, 276 F.3d at 9. The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Factual Background

Collins is a high school graduate who served in the army from February of 1995 to September of 2005.  In 2003 and 2004, Collins served in Iraq where he injured his back carrying another soldier.  He requested and was granted discharge from full-time military service because of health conditions.

After discharge from the army, Collins worked in construction until 2011.  He also served in the National Guard on a part-time basis.  On December 20, 2011, Collins applied for social security benefits based on physical and mental impairments, including degenerative disc disease and post traumatic stress disorder ("PTSD").

Because of chronic back pain, Collins had an MRI of the spine on July 23, 2008.  The results showed a protrusion and a small herniation that was encroaching over the nerve root at L4. Another small herniation was seen at L5-S1 with encroachment over the L5 nerve root.

On March 8, 2010, Collins sought mental health counseling at the Veterans Affairs Medical Center ("VAMC") in Jamaica Plain. Collins reported an increase in emotionality and difficulty with anger management, along with other symptoms.  He expressed interest in a referral to the "CRV Program" in Boston for assistance with anxiety and anger management.

Collins was laid off from his construction job at the beginning of December of 2011.  On December 12, 2011, at the direction of his wife, Collins sought mental health medication management at the Manchester VAMC.  The assessment was that Collins was experiencing exacerbation of his PTSD symptoms, primarily anger.  A few days later, Collins was seen at the Manchester VAMC urgent care department because of back pain.  He was taking prescription medication without relief.  He was assessed with back spasms.

3

At a meeting at the Manchester VAMC on January 25, 2012, Collins reported that he had stopped taking Effexor because of the side effects and also stopped taking Abilify and Sertraline. Although he was yelling less, his irritability and PTSD symptoms continued.  He was found to be alert, oriented, and having full affect and organized thoughts.  Irritability was his main complaint.

On February 21, 2012, Collins had a physical therapy consultation at the Manchester VAMC.  He reported chronic back pain in the lumbar region that had increased in frequency and severity in the last few months.  The examination showed decreased sensation in the left thigh and calf and positive left slump and left straight-leg test.  The physical therapy assessment was mechanical low back pain due to lumbar nerve-root impingement that caused intermittent radiating pain and decreased sensation and weakness in the left leg.  Collins was to undergo four to six weeks of traction therapy.

At a physical-therapy session in March of 2012, Collins reported that he had more pain after spending eleven hours snow plowing and that his pain had been at 8 out of 10 in the morning but decreased to 6 out of 10 by the time of the physical-therapy session.  He said that he had done his home exercises that morning without difficulty.  After several more sessions, Collins was discharged from physical therapy on March 12, 2012, because he had reached most goals.  The plan was that he would use a lumbar traction unit at home.

Collins had a therapy appointment for PTSD on March 12, 2012.  His PTSD was evaluated for disability benefits through the VA on March 23, 2012.  The evaluator found that Collins's PTSD symptoms, depressed mood and anxiety, caused clinically significant distress or impairment in social, occupational, or other important areas of functioning.  At a therapy session for PTSD in May of 2012, the nurse practitioner found that Collins had euthymic (neither high nor low) mood, full affect, and good activities of daily living.  In August of 2012, Collins was alert and oriented but had a tense mood with a constricted affect during most of the session.

Collins went to the Manchester VAMC in August of 2012 because of back pain that radiated down his left leg and caused numbness in his big toe.  X-rays of Collins's lumbar spine showed mild intervertebral disc space narrowing, vertebral endplate sclerosis, and a small oseteophyte formation that was consistent with mild degenerative disc disease.

Juliana Read, Ph.D. conducted a forty-minute consultative psychological examination of Collins in October of 2012.  Dr. Read found that Collins was slightly irritable but cooperative and that his gait, posture, and mannerisms were normal.  Collins said that he injured his back when he picked up a fellow soldier while serving in Iraq.  Collins reported that he had symptoms of hypervigilance, exaggerated startle reflex, flashbacks, and panic attacks several times a week triggered by memories or

reminders of the war.  Collins was continuing to serve in the National Guard, teaching classes on weekends.

In her examination, Dr. Read found that Collins's behavior and thought content were within normal limits and that his intellectual and cognitive functions were intact.  Dr. Read concluded that Collins was able to do activities of daily life, drive, and handle finances.  Despite irritability associated with PTSD, Collins was able to communicate effectively and interact appropriately with others.  He could understand and remember both simple and complex instructions and procedures and could maintain attention and concentration.  In the work context, Collins could make simple decisions, interact appropriately with supervisors, tolerate work stress, and maintain a work schedule aside from his physical issues.  Dr. Read diagnosed PTSD and noted that Collins's prognosis was limited by the severity of his back pain.

Collins had a consultation at the Boston VAMC Pain Clinic in October of 2012.  Collins described his back pain as a band across his lower back with sharp and stabbing pain shooting down his left leg.  The physical examination showed that Collins had limited range of lumbar motion due to pain and that his left leg was weaker than his right leg.  He was scheduled for a lumbar epidural steroid injection.

On October 31, 2012, James Samson, an occupational therapist, did a Functional Capacity Evaluation of Collins at

the request of a state-agency medical consultant, Burton Nault,
M.D.  Samson noted that Collins arrived at the appointment
independently and was able to complete the paperwork while
seated with no apparent increased pain or discomfort.  On
examination, Samson found that Collins had a full range of
motion and full strength in his cervical and lumbar spine,
elbows, wrists, hips, knees, and ankles but had increased pain
in the lumbar spine with motion and resistance.  Based on his
examination, Samson concluded that Collins could lift and carry
twenty-five pounds occasionally; could sit, stand, and walk
occasionally; and could do postural activities, like crouching
and stooping, occasionally.  Collins's stamina appeared to be
full.

Jonathan Jaffe, M.D., a nonexamining state agency
physician, completed a Physical Functional Capacity Assessment
form on November 7, 2012, based on Collins's records.  Dr. Jaffe
found that Collins's "discogenic and degenerative disc disease"
and his hearing loss were severe impairments.  Despite those
impairments, Collins would be able to lift and carry twenty-five
pounds occasionally and twenty pounds frequently, stand or walk
for about six hours in an eight hour work day, sit for about six
hours in an eight hour workday, and frequently do postural
activities.  Dr. Jaffe concluded that Collins's disc disease was

not at a "listing level" because Collins had retained sustainable functional capacity.[1]

Nicholas Kalfas, Ph.D., a nonexamining state agency psychologist, reviewed Collins's records on November 9, 2012, and completed a Psychiatric Review Technique form.  Dr. Kalfas found that Collins's medically determinable impairments could be expected to produce his symptoms.  In Dr. Kalfas's opinion, Collins had mild restrictions in the activities of daily living; mild difficulties in social functioning; no difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation.

On January 10, 2013, Collins went to the Pain Management Clinic at the Boston VAMC for a lumbar steroid injection for his chronic low back pain and radicular pain in his left leg.  During that appointment, the treating physicians, Drs. George Hanna and Ivan Valovski, reviewed the results from Collins's 2008 MRI and compared those results to a prior MRI done in December of 2006.  Drs. Hanna and Valovski found that the 2008 MRI results showed L5 nerve-root impingement which they stated was consistent with Collins's symptoms, which had not changed since 2008.

---

[1]The listing of impairments is provided at 20 C.F.R. Part 404, Subpart P, Appendix 1.  Section 1.00 pertains to the musculoskeletal system.

Collins applied for social security benefits on June 13, 2012, alleging disability since December 20, 2011.  The social security field officer noted that Collins shifted positions while sitting during the interview and had to turn his right ear to listen.  Collins's wife completed a Third Party Function Report on July 10, 2012, in which she said that Collins was often in pain, could walk a bit before needing to rest, could stand for only minutes, could mow the lawn with breaks, and fish.  She also said that Collins took care of their children while she worked but could not play with them in the way that he did before he was disabled.  She said that Collins was able to pay attention, to finish projects, to follow instructions, and to get along with authority figures.

In his own function report, Collins listed daily activities of stretching, sitting and standing, and doing little things around the house.  He reported difficulty in getting dressed, standing in the shower, and playing with his children.  He also reported having trouble concentrating and getting along with others but said that he had no problem following directions and dealing with authority.  He said that he could lift ten pounds, could walk thirty yards before needing to rest, could stand for twenty minutes, and could sit for thirty minutes.

A hearing before an ALJ was held on June 19, 2013.  Collins testified at the hearing to similar limitations in his activities and abilities as provided in his function report.  A

vocational expert also testified.  The ALJ issued a decision on July 22, 2013, denying Collins's application, and the Appeals Council denied his request for review.

### Discussion

Collins disputes the ALJ's findings at Steps Two and Three, arguing that the ALJ erred in failing to find that his PTSD was a severe impairment and that the ALJ's analysis of his back condition at Step Three was incomplete and erroneous.  The Acting Commissioner moves to affirm the decision.

A.  Mental Impairment

Collins contends that the ALJ erred in not finding a severe impairment at Step Two due to PTSD.  He acknowledges that an omission of a severe impairment at Step Two is not a reversible error as long as the sequential analysis continues and properly considers the claimant's impairments.  He argues that the ALJ erred at Step Four by failing to include limitations based on Collins's PTSD.  The Acting Secretary asserts that the ALJ properly assessed Collins's severe impairments and appropriately found that Collins's PTSD did not limit his ability to work.

1.  Step Two

At Step Two, the claimant must show that he has at least one impairment or a combination of impairments that is sufficiently severe "as to be the basis of a finding of inability to engage in any [substantial gainful activity]."  Titles II &

10

XVI:  Medical Impairments That Are Not Severe, SSR 85-28, 1985
WL 56856, at *3.  "[T]he Step Two severity requirement is . . . a
de minimis policy, designed to do no more than screen out
groundless claims."  McDonald v. Sec'y of Health & Human Servs.,
795 F.2d 1118, 1124 (1st Cir. 1986).  When an ALJ erroneously
omits a severe impairment at Step Two, the error does not
require reversal as long as the ALJ did find other severe
impairments and continued through the sequential analysis.  See
Bica v. Astrue, 2011 WL 5593155, at *9 (D.N.H. Nov. 17, 2011).

     In the Step Two analysis, the ALJ considered the record
evidence pertaining to Collins's claim of disability based on
PTSD.  The ALJ noted that Collins reported only occasional
symptoms due to PTSD and had not considered himself to be
disabled by PTSD.  The ALJ also relied on the opinions provided
by Dr. Read and Dr. Kalfas that Collins had no functional
limitations due to PTSD.

     Collins contends that the ALJ "cherry picked" information
from his medical records, failed to credit the parts of the
mental health disability evaluation by the VA that support his
claim, and misread Dr. Read's opinion.  Collins contends that
evidence in the record supports his claim of disability due to
PTSD.

     Dr. Read and Dr. Kalfas both found that Collins did not
have significant limitations caused by PTSD.  Contrary to
Collins's interpretation, Dr. Read did not limit Collins to

simple decision making but simply answered the question asked on the form.[2]  As the Acting Commissioner explains, the ALJ relied on substantial evidence in the record to conclude that Collins's anxiety and PTSD were not severe impairments.

In any case, the ALJ found severe impairments due to Collins's physical limitations and continued the analysis.

2.  Residual Functional Capacity

Collins also argues, briefly, that the ALJ erred in failing to include limitations due to impairments caused by PTSD in the residual functional capacity assessment.  A residual functional capacity assessment determines the most an applicant for benefits can do despite his limitations.  20 C.F.R. § 404.1545(a).  The Acting Commissioner's residual functional capacity assessment, as found by the ALJ, is reviewed to determine whether it is supported by substantial evidence.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765,

_____

[2]The form asked about Collins's current level of functioning with respect to categories.  To evaluate Collins's functioning as to "Reaction to Stress, Adaptation to Work or Work-like Situations," the form directed Dr. Read to "describe the claimant's ability to tolerate stresses common in the work setting, specifically the ability to make simple decisions, to maintain attendance and a schedule, and to interact appropriately with supervisors, etc."  Dr. Read answered:  "In my professional opinion, John is able to make simple decisions, able to interact appropriately with supervisors, able to tolerate stresses common in a work setting and able to maintain a schedule, aside from his medical issues/physical pain."

769 (1st Cir. 1991); Pacensa v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012).

The ALJ found that Collins retained the residual functional capacity to do light work without any limitations caused by mental-health issues.  The ALJ found that Collins's PTSD did not cause severe impairments based on the opinions of Dr. Read and Dr. Kalfas that Collins did not have significant functional limitations caused by anxiety and PTSD.  Although Collins points to evidence in the record to support his view that PTSD did cause severe impairments, substantial evidence supports the ALJ's finding, which satisfies the standard of review.  § 405(g); Nguyen, 172 F.3d at 35.

B.  Step Three

At Step Three of the sequential analysis, the ALJ must determine whether the applicant has an impairment or a combination of impairments that meets or medically equals the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P.  See Pfeffer v. Colvin, 2014 WL 1051197, at *3 (D. Mass. Mar. 18, 2014).  To meet a listed impairment, the applicant must demonstrate that he satisfies all of the criteria for that listing.  20 C.F.R. § 404.1525; Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").  When an applicant has

13

impairments that are not listed, he may still be found disabled at Step Three if he can show that his impairments are at least equal in severity and duration to an analogous listing. 20 C.F.R. § 404.1526.

The ALJ found that Collins's degenerative disc disease did not meet or equal Listing § 1.04, Disorders of the Spine, because of the lack of evidence of nerve-root or spinal-cord compromise. In making that finding, the ALJ noted that the most recent testing, x-rays taken on August 9, 2012, showed only mild degenerative disc disease. Collins argues that the ALJ erred because the interpretation of his 2008 MRI done at the Boston VAMC on January 10, 2013, was that he had L5 nerve-root impingement. He contends that the 2008 MRI is better evidence than the more recent x-ray and that the ALJ's failure to mention the MRI means that he did not consider that evidence.

Collins argues that the same ALJ made the same mistake in this case that he made in Crandlemere v. Astrue, 2013 DNH 7, 2013 WL 160334 (D.N.H. Jan. 15, 2013). In Crandlemere, the claimant asserted that his impairment met the listing at § 1.04, but the ALJ found in a cursory statement that there was no medical evidence of nerve-root compression, or the other requirements for § 1.04. The court noted, however, that an MRI showed disc herniation with nerve-root impingement at L5 and S1, that post operative MRI results also showed scar tissue and disc bulge at L5 and S1, and that more recent tests showed the

14

claimant had positive results on straight-leg testing.  The
court concluded that the ALJ's failure to reference the MRI
results and straight-leg tests left the court unable to
determine whether the ALJ considered that evidence.

In this case, however, the ALJ referenced medical evidence
that was contrary to the requirements for § 1.04.  In addition,
for purposes of determining Collins's residual functional
capacity, the ALJ noted that Collins was employed full time,
above the substantial gainful activity level, doing construction
work from October of 2005 until December of 2011 when he was
laid off.  The ALJ noted that Collins did not stop working
because of limitations caused by back pain.  In addition, the
ALJ adopted the assessment done by Dr. Jaffe based on Collins's
medical records through November 7, 2012, which included the
2008 MRI.  Dr. Jaffe found that Collins was able to do a full
range of light work.

The Acting Commissioner argues that even if the recent
interpretation of Collins's 2008 MRI were credited to show nerve-
root compromise, Collins has not shown that he met or equaled
§ 1.04A, § 1.04B, or § 1.04C, which would be required to show
disability at Step Three.  The Acting Commissioner notes that
Dr. Jaffe found that Collins had degenerative disc disease but
not at a listing level.

Dr. Jaffe's opinion provides substantial evidence to support
the ALJ's finding at Step Three, despite the ALJ's cursory

15

analysis.  Although the medical evidence might have been interpreted differently, the ALJ's findings must be affirmed when supported by substantial evidence.

<u>Conclusion</u>

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision, document no. 11, is granted, and Collins's motion to reverse and remand the decision, document no. 10, is denied.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landy McCafferty
United States District Judge

June 24, 2014

cc:  Janine Gawryl, Esq.
     Robert J. Rabuck, Esq.

16